**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| FIRST BANCSHARES, INC., and<br>FIRST HOME SAVINGS BANK, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| vs. | )<br>) | Case No. 10-3370-CV-S-RED |
| ST. PAUL MERCURY INSURANCE<br>COMPANY, | )<br>)<br>)<br>) | |
| Defendant/Third-Party Plaintiff, | )<br>) | |
| vs. | )<br>) | |
| VICKY J. DOOMS, | )<br>) | |
| Third-Party Defendant. | ) | |

## ORDER

Before the Court is St. Paul Mercury Insurance Company's Motion for Summary Judgment and Suggestions in Support (Doc. 41). Defendant/Third-Party Plaintiff St. Paul Mercury Insurance Company ("St. Paul") requests the Court enter summary judgment in its favor which would dispose of all claims asserted by First Bancshares, Inc. and First Home Savings Bank (collectively the "Plaintiffs") against it. For the reasons below, the Court **GRANTS** the Motion for Summary Judgment.

## BACKGROUND

St. Paul is an insurance company that issued an insurance policy ("Policy") to First Banchares, Inc. ("First Banchsares"). First Home Savings Bank ("First Home"), a subsidiary of First Bancshares, was an insured under the Policy. Part of the coverage under the Policy was to insure Plaintiffs against any claim of an 'Employment Practices Act,' which includes a claim of wrongful

discharge by a former employee. Under the terms of the policy, coverage was not to extend to "any claim arising from any such fact, circumstance, or situation to the extent the claim is against an Insured who knew of such fact, circumstance or situation prior to issuance of the proposed policy." (Ex. C-1 p. 5 Doc. 41-4). Plaintiffs were asked to provide "any knowledge or information of any fact, circumstance or situation related to any coverage that is available under this policy which could reasonably give rise to a claim against them." *Id.* Coverage under the policy extended between July 1, 2007 to July 1, 2010.

Vicky Dooms ("Dooms"), a former employee of First Home, was terminated by First Home on April 12, 2007. On April 29, 2007 Dooms filed an application for unemployment benefits with the Missouri Division of Employment Security ("Division"). Dooms lost on her initial application and filed an appeal on May 21, 2007, which she again lost. On October 14, 2009 Dooms filed a lawsuit against Plaintiffs seeking damages for what she claims was a wrongful discharge of her employment.

After Dooms' suit was filed, Plaintiffs sought coverage under the Policy and eventually St. Paul sent a letter to Plaintiffs notifying Plaintiffs that coverage would not extend to Dooms' lawsuit. In response, Plaintiffs filed this lawsuit against St. Paul in state court. Plaintiffs assert two claims against St. Paul. First, Plaintiffs seek a declaratory judgment against St. Paul indicating that the Policy covers Dooms' lawsuit asserted against them and second, Plaintiffs seek a recovery of damages incurred for having to defend Dooms' lawsuit. St. Paul removed the state court action to federal court and added Dooms as a third-party defendant so that any determination concerning coverage of Dooms' claim under the Policy will be binding on Dooms as well as Plaintiffs.

Now St. Paul moves for summary judgment on the basis that under the terms of the Prior

Knowledge[1] provision of the Policy, Dooms' wrongful discharge claim against Plaintiffs is not covered under the policy and therefore, summary judgment should be entered in St. Paul's favor on Plaintiffs' claims.

## STANDARD

On a motion for summary judgment, a court must view the record in a light most favorably to the nonmoving party. *Taylor v. St. Louis Cnty. Bd. of Election Comm'rs*, 625 F.3d 1025, 1026-27 (8th Cir. 2010). Summary judgment is appropriate where "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id*.

## DISCUSSION

The sole basis on which St. Paul asserts it is entitled to summary judgment is because the Prior Knowledge provision of the Policy excludes coverage. The provision, as noted above, provides that "any claim arising from any such fact, circumstance, or situation to the extent the claim is against an Insured who knew of such fact, circumstance or situation prior to issuance of the proposed policy" is not covered under the Policy. (Ex. C-1 p. 5 Doc. 41-4). The provision describes what constitutes 'prior knowledge' as "any knowledge or information of any fact, circumstance or situation related to any coverage that is available under this policy which could reasonably give rise to a claim against [the Insureds]." *Id*. St. Paul claims that a determination of whether the proceedings before the Division satisfies the Prior Knowledge provision consists of two elements. First is whether Plaintiffs knew of facts, circumstances, or situations which could reasonably give rise to a claim and second, whether Dooms' state suit against Plaintiffs arises from facts,

---

[1] The term 'prior knowledge,' used to describe the provision at issue, is not specifically used in the Policy.

3

circumstances or situations known to Plaintiffs. St. Paul's position is that the proceedings before the Division in which Dooms' applied for unemployment benefits constituted prior knowledge under the provision because in Dooms' initial application and again on appeal, she claimed she was retaliated against for being a 'whistleblower' with respect to two chief executive officers she alleged engaged in unethical conduct.

Plaintiffs do not dispute the second requirement, namely that Dooms' lawsuit alleging she was unlawfully discharged 'arises from' facts, circumstances or situations encompassing the proceedings before the Division. As St. Paul notes, under Missouri law the phrase 'arising out of' is interpreted broadly, requiring only a "simple causal relationship" as opposed to a proximate cause standard. *Capitol Indem. Corp. v. 1405 Assocs.*, 340 F.3d 547, 550 (8th Cir. 2003). Both the state lawsuit and the application for unemployment benefits concern Dooms' alleged unlawful termination for what she considered to be retaliation for being a 'whistleblower.' Plaintiffs also do not dispute that they were aware of the proceedings in front of the Division before entering into the insurance contract with St. Paul.

Therefore, the issue becomes whether the proceedings before the Division encompass facts, circumstances, or situations which could have reasonably given rise to a claim. In response, Plaintiffs argue that the proceedings before the Division do not meet the requirements of the Prior Knowledge provision. Plaintiffs argue that the proceedings in front of the Division, which resolved in their favor, and the fact that Dooms never gave any indication of any threat of a lawsuit after the proceedings concluded and before her lawsuit against Plaintiffs was filed demonstrate that the requirements of the Prior Knowledge provision are not met.

St. Paul alleges that a reasonable person standard should control the determination of

whether the proceedings before the Division satisfies the requirements of the Prior Knowledge provision and cites to authority to support its position, although none of the cases apply Missouri law. However, in addition to the cases relied upon by St. Paul, the Missouri Supreme Court seems to agree with their contention, at least from the standpoint that Plaintiffs' subjective intent should not control the analysis of whether the proceedings before the Division are sufficient. *See Wittner, Poger, Rosenblum & Spewak v. Bar Plan Mut. Ins. Co.*, 969 S.W.2d 749, 754 (Mo. 1998) (en banc) (determining that a contract provision providing coverage for acts occurring before the policy period as long as the "Insured had no basis to believe that the Insured" had committed an act giving rise to liability was "not the subjective belief of the insured" but rather derived from the language in the policy).

In *Wittner*, the Missouri Supreme Court upheld a determination that a law firm sued for malpractice was not covered under their malpractice insurance policy. *Id.* at 755. The policy at issue provided coverage for acts occurring before the policy coverage period as long as the law firm "had no basis to believe" that it had committed an act subjecting it to liability. *Id.* at 754. The Court ultimately determined that there was a basis to believe the law firm, through its attorneys, committed an act subjecting it to liability where a default decree was entered against one of its clients because an attorney failed to timely respond to a divorce petition. That same client later sent two letters to the firm complaining of the default decree entered against her. *Id.* at 750-51. The first letter indicated that the client was upset with the firm's negligence and the second letter indicated that there was a strong possibility she may file a lawsuit against the firm. *Id.*

The facts are not as strong in St. Paul's favor as those in *Wittner*; however, from an objective perspective, the facts in the record demonstrate that the facts, circumstances or situations

5

surrounding the proceedings in the Division *could reasonably give rise to a claim*, which is the language utilized in the Policy. Although the proceedings before the Division ended in a determination in Plaintiffs' favor, the basis for the proceedings was Dooms' termination. Throughout the proceedings Dooms claimed she was terminated as retaliation for informing on certain practices of First Bank, which is the same factual basis of her state lawsuit against Plaintiffs. Moreover, even though there is no evidence in the record to suggest that Dooms directly threatened Plaintiffs with a lawsuit, the nature of her allegations during the proceedings could reasonably give rise to a claim. *See City of Brentwood, Mo. v. Northland Ins. Co.*, 397 F. Supp. 2d 1143, 1146-47 (E.D. Mo. 2005) (finding a condition precedent provision excluded coverage where the insured knew of a former employee's charges of discrimination before the MCHR and EEOC[2] and the insured "could have reasonably foreseen that a claim might be made arising from those charges[3]"). For these reasons the Court finds that knowledge of the proceedings before the Division was sufficient to satisfy the Prior Knowledge provision excluding coverage under the Policy.

Plaintiffs also raise additional arguments in an attempt to demonstrate that summary judgment in St. Paul's favor is not warranted. First, Plaintiffs note that the application for insurance coverage submitted to St. Paul indicated that Plaintiffs were aware of facts, circumstances or situations that arise under the Prior Knowledge provision. Plaintiffs seem to argue that St. Paul was put on notice that Plaintiffs "had been involved in legal proceedings and had more information to

---

[2] MCHR and EEOC are acronyms for the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission.

[3] The policies provided that coverage would not extend if the insured "had any knowledge of any circumstance likely to result in or give rise to a 'claim' nor could have reasonably foreseen that a 'claim' might be made." *Id*.

6

provide the Insurer about those proceedings." (Opposition Doc. 46 p. 5-6). It is not clear exactly what Plaintiffs' argument is with respect to indicating on the application that they were aware of legal proceedings that could reasonably give rise to a claim. There is no provision in the Policy or application which provides coverage for any such pre-policy period potential claims that are disclosed by the insured. The Prior Knowledge provision is applicable regardless of whether or not the matter is disclosed in the application. This is a non-issue. On the other hand, if there is any inference to be drawn from these facts it is that Plaintiffs' affirmative response by checking "yes" regarding potential legal claims and the argument herein that this was regarding the Dooms' claim raises the inference that Plaintiffs did, in fact, consider that this claim "could reasonably give rise to a claim against them." (Ex. C-1 p. 5 Doc. 41-4).

Plaintiffs' final argument in opposition to summary judgment is that two provisions in the policy, the Prior Knowledge provision and an exclusion under the Employment Practices Liability Insuring Agreement, render the Policy ambiguous. Their position is that the two clauses are in contradiction with each other. The exclusion at issue provides that:

> The insurer shall not be liable for Loss on account of any Claim made against any Insured ... based upon, arising out of, or attributable to any prior or pending written demand for monetary damages or non-monetary relief, administrative, regulatory or arbitration proceeding or civil or criminal litigation against any Insured as of the applicable Prior Litigation Date set forth in the Declarations, or the same or substantially the same facts, circumstances or situations underlying or alleged therein ...
> 
> (Ex. A Doc. 41-1 p. 39).

St. Paul responds by arguing that the two policies do not contradict each other but are in fact different provisions that operate to exclude coverage. St. Paul's position is that the Prior Knowledge provision excludes coverage based upon the knowledge of facts, situations or circumstances known to Plaintiffs at the time the Policy was entered into, whereas the exclusion operates to deny

7

"coverage for any claim based upon the same facts asserted in an actual claim made before the Prior Litigation Date." (Reply Doc. 50 p. 9).

A contract is ambiguous when " 'there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy.' " *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. 2009) (en banc) (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (en banc)). Furthermore, " 'language is ambiguous if it is reasonably open to different constructions.' " *Id*. The Missouri Supreme Court has determined that where a contract contains a promise of something in one provision but a different provision negates what is promised, the contract is ambiguous. *Id*.

The Court finds Plaintiffs' argument to be without merit for two reasons. First, it has not been shown how the two separate provisions which operate to deny coverage contradict each other, given that both provisions operate only to exclude coverage and neither provision provides coverage that is later negated. Second, even if the Court were to assume the provisions were in contradiction and therefore the Policy was ambiguous, Plaintiffs' own resolution of the ambiguity undermines their position. Plaintiffs go on to argue that the provisions "may be reconciled ... by finding the Policy provides coverage for claims arising out of facts or circumstances that were the subject of previous litigation where the claims were not anticipated at the time of the Application." (Opposition Doc. 46 p. 11). This appears to be the same standard the Court previously applied in determining that coverage was excluded. *See Northland*, 397 at 1147 (finding an ambiguity argument to be a 'red herring' where the insurance contract interpreted in the insured's favor still operated to deny coverage). Plaintiffs then contend that because Dooms lost on the proceedings before the Division, did not appeal that determination and never threatened to later sue Plaintiffs, Plaintiffs could not anticipate the current lawsuit asserted against them by Dooms. Notably, this is the same exact

argument Plaintiffs used in response to the argument that the Prior Knowledge provision denied coverage. The Court has already found the proceedings before the Division were sufficient to deny coverage under the Policy. As such, Plaintiffs' final argument is without merit.

## CONCLUSION

For the above reasons, the Court **GRANTS** the Motion for Summary Judgment. Judgment is hereby entered in favor of St. Paul and against Plaintiffs on Counts I and II.

**IT IS SO ORDERED.**

DATED: September 16, 2011         */s/ Richard E. Dorr*
                                  RICHARD E. DORR, JUDGE
                                  UNITED STATES DISTRICT COURT